# EXHIBIT C

FILED
9/17/2021 4:34 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH01592

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## CHANCERY DIVISION

SCOTT RICE,

    Plaintiff,

    v.

THOMAS J. DART in his official capacity as
Sheriff of Cook County, Illinois;
THE COOK COUNTY SHERIFF'S
MERIT BOARD; and COOK COUNTY,
ILLINOIS, as indemnitor.

    Defendants.

Case Number: 2021 CH 01592

Judge Neil H. Cohen

AD DAMNUM: $600,000
+ back pay + fees + interest

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

SCOTT RICE ("Plaintiff"), by and through his attorneys and DISPARTI LAW GROUP,

P.A., states as follows for his First Amended Complaint ("Complaint") against Defendants

THOMAS J. DART ("Dart"), the COOK COUNTY SHERIFF'S MERIT BOARD ("Board"),

and the COUNTY OF COOK, ILLINOIS, as indemnitor (collectively, "Defendants").

## NATURE OF THE CASE

1. Recent reports have demonstrated that there is a great disparity in terms of hiring

Blacks for law enforcement positions due to the barriers associated with the hiring process.

2. [1]According to a September 7, 2021 *Chicago Tribune* article, hiring data within the

Chicago Police Department ("CPD") was examined by the city Inspector General from 2016 to

2018 and showed that, "at the beginning of the initial application process during the review

period, 37% of CPD applicants were Black in a city where 30% of the population is African-

---

[1] See: https://pantagraph.com/news/state-and-regional/crime-and-courts/as-chicago-police-seek-more-diversity-a-former-candidate-questions-the-hiring-process/article_9b0ecb5b-b02c-54af-80e7-433afb397758.html

EXHIBIT C

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

American. But by the end of the process, only 18% of all candidates who ultimately were invited to the police academy were Black."

3.   Until the events giving rise to this case, Plaintiff has been an African-American Correctional Officer who grew up in the Englewood neighborhood of Chicago, Illinois.

4.   Plaintiff was a Correctional Officer since his original date of hire on November 13, 2006, and he duly exercised the duties and functions of that office during that timeframe.

5.   Because of Plaintiff's background and where he grew up in Englewood, at 7432 South Aberdeen, Chicago, Illinois 60621, it was a foregone conclusion that, indeed, he would know individuals who were affiliated with Chicago street gangs; indeed, gang affiliation was so common as to be nearly an aspect of local culture, especially for boys and men growing up in Plaintiff's time.

6.   Plaintiff also had a generally extremely poor and disadvantaged upbringing with family trouble and poverty, including that he lived with a single mom and his father was never present.

7.   Plaintiff has no higher education whatsoever and graduated with a 2.7 GPA.

8.   At 23 years old, Plaintiff joined up with the Cook County Department of Corrections.

9.   Notwithstanding Plaintiff's disadvantages, he sought a career at the Cook County Sheriff's Office as a Correctional Officer in order to improve his situation in life and help individuals who were in trouble due to their own poor and disadvantaged upbringings.  A Correctional Officer position offered Plaintiff the opportunity to serve his community and to do good.

10. Yet, Plaintiff also maintained some relationships with persons from his youth who had gang affiliations, including Ronald Webb, Michael Hopkins, Brandon Armour, and Dante Mason.

11. These were people he grew up with or knew in his youth or in his twenties, and he socialized with them because they were friends or because they grew up in the same neighborhood around the same time and shared common cultural and social backgrounds.

12. At all times, Plaintiff admitted that he had these social relationships to the Sheriff's Office of Professional Review, never once denied these relationships, and averred that they were social in nature, and resulted from his youth or common cultural background.

13. For these relationships, and without any evidence of any wrongdoing whatsoever resulting from them, Plaintiff was investigated by the Sheriff's Office, suspended without pay, and fired.

14. It cannot be gainsaid: the termination decision merely references that he had relationships with people with gang affiliations – it says nothing about Plaintiff engaging in any criminal or gang activity, or any wrongdoing, whatsoever, and there is no evidence whatsoever, anywhere, that Plaintiff engaged in criminal or gang activity.

15. So too, America is now in a time of great division between sworn officers and members of the public, and, in particular, African-Americans. Indeed, this case is filed right as the Derek Chauvin criminal trial is underway, for which there is arguably no greater example of the tragic divide between law enforcement and the community.

16. Yet, despite that America is facing a crisis between sworn officers and the community, the Sheriff and the Board elect to fire an otherwise good Correctional Officer, merely because he knows people who are in gangs due to his upbringing in a disadvantaged, black, and poverty-stricken neighborhood: 7432 South Aberdeen, Chicago, Illinois 60621, right in the heart of Englewood.

17. The public interest is not served by a termination such as this, which serves only to

4

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

further divide police and sworn officers from the community they represent.

18. At the same time, Plaintiff is not claiming in this Complaint that sworn officers cannot be fired for gang or criminal activity; rather, it is the mere firing of an officer for having relationships with people who happen to be in gangs or have criminal backgrounds, that is so contrary to the public policy of the current times in which sworn officers are divided from the community at large.

19. Plaintiff avers that maintaining social relationships with people who happen to have gang affiliations or criminal backgrounds serves the public interest of uniting sworn officers with the community they serve and assisting in the development of much-needed trust between these groups.

20. Plaintiff avers that, by a knee-jerk firing such as this without consideration of background factors such as upbringing, race, culture, economics, and context, Defendant Sheriff and the Board are being insensitive to the cultural, racial, and economic backgrounds of many Correctional Officers who serve Cook County.

21. Plaintiff avers that the mechanical, unthinking, and rote application of the Sheriff's gang affiliation and other policies to Plaintiff in this case, and other officers such as Sonia Dennis-Brown and Marquis Beauchamp, violates the Fourteenth Amendment of the United States Constitution, on which this claim is based.

22. Plaintiff brings this suit seeking administrative review of the decision of the Cook County Sheriff's Merit Board, and recourse for deprivation of his Fourteenth Amendment right to Equal Protection, in addition to Title VII intentional and disparate impact discrimination claims on the basis of race and national origin.

23. The Equal Protection claim is not a class-of-one claim, but rather a suspect classification

claim permissible after *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008).

## JURISDICTION AND VENUE

24. This Court has original and general jurisdiction over all claims raised herein under the Illinois' Constitution, Article VI, Section 9.

25. This Court also has jurisdiction over Count I pursuant to Illinois' Administrative Review Law ("ARL"), 735 ILCS § 5/3-101, *et seq*.

26. This Court also has jurisdiction over Count II pursuant to 42 U.S.C. § 1983, *et seq.*, providing for redress for wrongful deprivations of constitutional rights, such as the deprivation of Equal Protection alleged herein.

27. This Court has jurisdiction to award attorney's fees as to Count II pursuant to 42 U.S.C. § 1988.

28. This Court has jurisdiction over Counts III and IV pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*

29. Venue is proper in this Court because Defendants have their principal places of operation in Cook County, Illinois, and the acts and omissions giving rise to Plaintiff's claims have occurred in Cook County, Illinois.

30. Plaintiff filed charges of discrimination (Charge No. 440-2021-04858) against Defendant Dart with the Equal Employment Opportunity Commission ("EEOC"). In his EEOC Charges, Plaintiff asserted that he was discriminated against based on his race, national origin, and color under Title VII of the Civil Rights Act. Plaintiff requested his Right to Sue letter.

31. As of the filing of this First Amended Complaint, Plaintiff has received a Right to Sue letter. Plaintiff attaches a copy of the Right to Sue letter to this First Amended Complaint as *Exhibit 1.*

## PARTIES

32. Plaintiff Scott Rice is a legal adult, a resident of Cook County, Illinois and has been at all times relevant a Cook County Sheriff's Correctional Officer. He is the Correctional Officer named in the Board's decision attached hereto *Exhibit A* and incorporated by reference herein.

33. The Cook County Sheriff's Merit Board ("Board") is an administrative agency within the meaning of 735 ILCS § 5/3-101, and is created and empowered pursuant to the Act, 55 ILCS § 5/3-7001, *et seq.*

34. Defendant Thomas J. Dart ("Dart" or "Sheriff") is a legal adult and a resident of Cook County, Illinois, and is the duly-elected Sheriff of Cook County, Illinois, exercising those powers and duties outlined in Illinois statute, 55 ILCS § 5/3-6001, *et seq.*

35. Defendant Dart was a party of record in the administrative proceedings before the Board seeking Plaintiff's termination and is a necessary party to these proceedings pursuant to the ARL.

36. Defendant Cook County, Illinois is a unit of local government with indemnification responsibilities pursuant to the Illinois' Tort Immunity Act. It is named solely in its capacity as indemnitor of the other Defendants.

### COUNT I: ADMINISTRATIVE REVIEW OF THE BOARD'S DECISION UNDER ILLINOIS' ADMINISTRATIVE REVIEW LAW
(Plaintiff v. Defendants Sheriff and Board)

**A. The Findings Of Fact Are Against The Manifest Weight/Clearly Erroneous, And Termination Lacks Just And Sufficient Cause.**

37. The BOARD issued its decision *(Exhibit A)* in this matter on March 4, 2021.

38. The decision is an administrative decision within the meaning of the ARL because it

affects the legal rights of the Plaintiff by depriving him of pay, benefits, and all privileges and emoluments of his employment with the SHERIFF's employment, and because the decision terminates the proceedings before the BOARD.

39. The Rules and Regulations of the BOARD expressly adopt the provisions of the ARL, stating, "[f]iling time for administrative review actions will be calculated from the date of service of the Board's Final Decision, i.e., thirty-five (35) days, pursuant to provisions of the Administrative Review Law." *Rules and Regulations of the Board*, Article IX(F)(4) (as amended April 19, 2018).

40. This Complaint in this matter is timely brought within 35 days after service of the decision on Plaintiff.

41. All of the factual findings in the decision are contrary to the manifest weight of the evidence, unsupported by clear and convincing evidence, and constitute insufficient cause for the discipline imposed.

42. All of the conclusions of law are unsupported by sufficient evidence and/or contrary to law.

43. The discipline imposed is based on trivial allegations and is not based upon a substantial shortcoming rendering the continuation of Plaintiff in the service detrimental to the discipline or efficiency of the service.

**B.  Answer Consisting Of Entire Record And Certification.**

44. The transcript of all proceedings before the Board, exhibits offered and entered into evidence, and the full and complete Board file shall be filed by the Board as part of the record, as well as a certified copy of the entire record of proceedings under review.

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

WHEREFORE, Plaintiff requests that this Court reverse the Board, and remand this matter with instructions to enter a finding of not guilty against Plaintiff and to order Plaintiff reinstated with full back pay, benefits, seniority, and all other losses connected with his discharge. *See* 735 ILCS 5/3-111(a) ("The Circuit Court has power: … (5) to affirm or reverse the decision in whole or in part. . .(6). . .to give such other instructions as may be proper. . ."); *see, e.g.*, *Walker v. Dart*, 2015 IL App (1st) 140087, ¶34 (1st Dist. 2015) (ordering reinstatement and back pay); *Promisco v. Dart*, 2012 IL App (1st) 112655 (1st Dist. 2012) (same); *Cole v. Retirement Bd. of Policemen's Annuity and Benefit*, 396 Ill.App.3d 357, 372 (1st Dist. 2009) (ordering benefits); *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308 (1st Dist. 2014) (same); *cf. Goral, et al. v. Dart, et al.*, 2020 IL 125085, ¶¶65-68 (Oct. 22, 2020).

## COUNT II: FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATION BASED ON SUSPECT CLASSIFICATION (RACE) PURSUANT TO 42 U.S.C. § 1983
(Plaintiff v. Defendants Sheriff and Board)

45. A governmental entity may be liable for a Section 1983 violation if an individual with final policymaking authority for the governmental entity in question causes the constitutional deprivation. *See, e.g.*, *Monell v. City of New York*, 436 U.S. 658, 690 (1978); *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002).

46. At all times relevant, Defendant Sheriff has been a final policymaker of the Cook County Sheriff's Office as he is and has been the duly-elected Sheriff of Cook County, Illinois exercising all duties and functions in, *inter alia*, 55 ILCS § 5/3-6001, *et seq.*

47. Defendant Sheriff is and has been the final policymaker as to the gang affiliation general order, and all other orders, cited in the Plaintiff's termination decision and that were the basis for his discharge because: (i) Dart issued such orders; (ii) Dart's Office drafted such orders; (iii)

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

Dart's office expected strict compliance with such orders; (iv) the orders that were the moving

force behind Plaintiff's discharge were within the realm of Dart's grant of authority. *See*

*Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676-76 (7th Cir. 2009).

48. At all times relevant, Defendant Board has been a final policymaker of the Cook County

Sheriff's Office in that it exercises all duties encompassed by the Cook County Sheriff's Merit

Board Act, 55 ILCS § 5/3-7001, *et seq*., including by rendering disciplinary decisions such as the

termination in issue in this case.

49. At all times relevant, Defendant Sheriff has acted under color of law in its suspension and

termination of Plaintiff.

50. At all times relevant, Defendant Board has acted under color of law in its suspension and

termination of Plaintiff.

51. While the Board and Sheriff are purportedly independent according to law, in fact, they

operate in tandem and as one entity, at least for the following reasons:

    a.  The Board, by and large, upholds the disciplinary requests sought by the Sheriff;

    b.  The Board's members are appointed by the Sheriff and, on information and belief,

the Sheriff has the ability to force Board members to resign from their positions as has happened

in the past;

    c.  The Board is staffed by persons employed by the Cook County Sheriff's Office

and/or there is a transference relationship between the Board's staff and the Sheriff's office,

including that persons who work in the Sheriff's Office may be detailed to the Board, and vice

versa;

    d.  The Board's staff utilizes an "@ccsheriff.org" email address, which is separate

10

and distinct from the "@cookcountyil.gov" email address. "@ccsheriff.org" utilized by the Board is the same as the domain utilized by the Sheriff's Office.

  e.  The Board's Rules and Regulations incorporate the General Orders and Special Orders of the Sheriff's Office at Article X.

  f.  The Sheriff may deputize members of the Board. *See* 55 ILCS 5/3-7002.

  g.  The Sheriff may appoint replacements to fill vacancies. *See* 55 ILCS 5/3-7002.

  h.  The Board establishes classifications of ranks and qualifications for same that go into effect at the Sheriff's Office. *See* 55 ILCS 5/3-7006.

  i.  The Board's and the Sheriff's disciplinary authority are connected and have mutuality in that "disciplinary measures prescribed by the Board may be taken by the Sheriff. . ." *See* 55 ILCS 5/3-7011.

52. The Board lacks true independence from the Sheriff in fact and, for purposes of this Count, their actions are in tandem and constitute dual action from the same governmental unit.

53. For purposes of this Count, the actions of the Sheriff and the Board are all one as to Plaintiff in that both entities together caused Plaintiff's termination based on violations of gang and criminal affiliation policies.

54. By express act, the Sheriff removed Scott Rice from the payroll and from his Correctional Officer position pursuant to the Board's termination decision.

55. By express act, the Board terminated Plaintiff on March 4, 2021 in the decision attached as *Exhibit A.*

56. At all times relevant, Plaintiff associated with private individuals, including Ronald Webb, Michael Hopkins, Brandon Armour, and Dante Mason.

57. At all times, a less restrictive means existed to accomplish any of the Sheriff's purposes

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

in promulgation and application of the gang affiliation and other policies applied in this case, and such means would not cause discrimination on Plaintiff merely because of his race, racial background and upbringing, and economic background, *to wit*:

j.   The Sheriff could require evidence of actual gang or criminal activity engaged in by the member before seeking termination;

k.   The Sheriff could require more evidence of high risk of actual gang or criminal activity than that adduced in Plaintiff's case;

l.   The Sheriff could prohibit application of the gang affiliation policy merely on evidence of association alone;

m.   The Sheriff could eschew terminating officers over associations with persons with criminal backgrounds or gang affiliations where the officer comes from a personal background where such relationships would be overwhelmingly likely (*e.g.*, they grew up in Englewood, like Plaintiff) without first conducting a non-adversarial meeting to understand the relationships;

n.   The Sheriff could vet these cases by creating a sworn officer position designed to understand the relationship between the community and work in corrections to prevent terminations based on gang affiliations that, in fact, just work to perpetuate racism and division between sworn officers and the community.

58. Alternatively, no rational basis exists for the rote, knee-jerk, mechanical application of the gang affiliation policy on Plaintiff in this case, and no set of facts exist justifying such an application.  For example, the Sheriff might claim that preventing criminal or gang activity within sworn staff justified this policy, but there is no evidence of that or even a heightened risk of that in this case. Instead, Plaintiff was fired just because he knows some folks with gang affiliations or criminal backgrounds, due to Plaintiff's personal background.

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

59. The Merit Board's decision specifically states, "it is against every aspect of law enforcement for an officer to be in an ongoing association with gang members and felons." *Exhibit A*, p.3-4.

60. The foregoing statement demonstrates that the policy was applied mechanically and without sensitivity to the real detriment the policy does to African-Americans in the community who want to seek a higher-calling in correctional or law enforcement work but who come from poor, disadvantaged backgrounds.

61. Plaintiff avers that the foregoing facts establish that he has suffered a deprivation of Equal Protection by the Sheriff and the Board, *to wit*, he comes from a poor background in Englewood and is Black.

62. At the same time, White / non-Black officers who are not from such upbringings and backgrounds do not have to relinquish all prior social relationships or acquaintances merely because they join law enforcement.

63. At the same time, too, because of a higher rate of policing in Englewood, there is a higher rate of arrests, indictments and convictions for crime there, making it more likely anyone from that neighborhood who goes into law enforcement would have associations with persons with criminal backgrounds.  Not so for people from white or wealthier neighborhoods.

64. Due to the Sheriff's and the Board's deprivation of Plaintiff's constitutional right to Equal Protection, Plaintiff has suffered damages, including: job loss, career loss, reputational damage, loss of pay and benefits (including pension contributions and service credits), loss of health insurance, loss of benefit time and uniform allowances, loss of his home, loss of his relationships, emotional distress in the extreme (including night terrors, sweats, depression, anxiety, generalized fear), and other compensatory losses.

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Honorable Court enter Judgment in his favor, and against Defendants, and enter all appropriate relief, including reinstatement, back pay, back benefits, reasonable attorneys' fees, and compensatory damages to make him whole completely in the amount of $600,000 in addition to recoupment of all lost pay and benefits.

## COUNT III: TITLE VII VIOLATION INTENTIONAL DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN
### (Plaintiff v. Defendants Sheriff and Board)

65. At all times relevant, Defendant Sheriff has been an "employer" within the meaning of Title VII because it has employed 15 or more employees for each working day in each of 20 or more weeks in the current and preceding calendar years.

66. At all times relevant Defendant Sheriff has been engaged in an industry affecting commerce.

67. At all times relevant, Plaintiff has been an "employee" within the meaning of Title VII because he was employed by the Sheriff and Cook County, Illinois.

68. While the Board and Sheriff are purportedly independent according to law, in fact, they operate in tandem and as one entity, at least for the following reasons:

    a.   The Board, by and large, upholds the disciplinary requests sought by the Sheriff;

    b.   The Board's members are appointed by the Sheriff and, on information and belief, the Sheriff has the ability to force Board members to resign from their positions;

    c.   The Board is staffed by persons employed by the Cook County Sheriff's Office and/or there is a transference relationship between the Board's staff and the Sheriff's office, including that persons who work in the Sheriff's Office may be detailed to the Board, and vice versa;

14

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

d.   The Board's staff utilizes an "@ccsheriff.org" email address, which is separate and distinct from the "@cookcountyil.gov" email address. "@ccsheriff.org" utilized by the Board is the same as the domain utilized by the Sheriff's Office.

e.   The Board's Rules and Regulations incorporate the General Orders and Special Orders of the Sheriff's Office at Article X.

f.   The Sheriff may deputize members of the Board. *See* 55 ILCS 5/3-7002.

g.   The Sheriff may appoint replacements to fill vacancies. *See* 55 ILCS 5/3-7002.

h.   The Board establishes classifications of ranks and qualifications for same that go into effect at the Sheriff's Office. *See* 55 ILCS 5/3-7006.

i.   The Board's and the Sheriff's disciplinary authority are connected and have mutuality in that "disciplinary measures prescribed by the Board may be taken by the Sheriff. . ." *See* 55 ILCS 5/3-7011.

j.   The Board lacks true independence from the Sheriff in fact and, for purposes of this Count, their actions are in tandem and constitute dual action from the same governmental unit.

k.   Both the Board and the Sheriff constitute Plaintiff's "employer" for Title VII purposes and the Board is a subunit of the Sheriff for purposes of Title VII.

l.   For purposes of this Count, the actions of the Sheriff and the Board are all one as to Plaintiff in that both entities together caused Plaintiff's termination based on violations of gang and criminal affiliation policies.

69. Because of Plaintiff's background and where he grew up in Englewood, at 7432 South Aberdeen, Chicago, Illinois 60621, it was a foregone conclusion that, indeed, he would know individuals who were affiliated with Chicago street gangs; indeed, gang affiliation was so

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

common as to be nearly an aspect of local culture, especially for boys and men growing up in Plaintiff's youth.

70. As Plaintiff joined the Cook County Sheriff's Office as a Correctional Officer, he also maintained some relationships with persons from his youth who had gang affiliations, including Ronald Webb, Michael Hopkins, Brandon Armour, and Dante Mason.

71. These were people he grew up with or knew in his youth or in his twenties, and he socialized with them because they were friends or because they grew up in the same neighborhood around the same time and shared common cultural and social backgrounds.

72. At all times, Plaintiff admitted that he had these social relationships to the Sheriff's Office of Professional Review, never once denied these relationships, and averred that they were social in nature, and resulted from his youth or common cultural background.

73. For these relationships, and without any evidence of any wrongdoing whatsoever resulting from them, Plaintiff was investigated by the Sheriff's Office, suspended without pay, and fired.

74. The Sheriff, through the Board, committed intentional discrimination against Plaintiff based upon his race (Black) and National Origin (Englewood, Illinois) by applying the gang affiliation and other general orders against him.

75. White / non-Black officers who are not from such upbringings and backgrounds do not have to relinquish their prior social relationships or acquaintances merely because they join law enforcement.

76. At the same time, too, because of a higher rate of policing in Englewood, there is a higher

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

rate of arrests, indictments, and convictions for crime there, making it more likely anyone from that neighborhood who goes into law enforcement would have associations with persons with criminal backgrounds. Not so for people from white or wealthier neighborhoods.

77. The Merit Board's decision specifically states, "it is against every aspect of law enforcement for an officer to be in an ongoing association with gang members and felons." *Exhibit A*, p.3-4.

78. The foregoing statement demonstrates the Merit Board's decision has an adverse impact on Blacks, as a whole, as the likelihood of such associations with gang members and felons among Blacks who go into law enforcement is much more significant than non-Black officers.

79. The Sheriff or Board cannot articulate a legitimate, non-discriminatory reason for investigating, suspending, and terminating Plaintiff on the basis of his ongoing social relationships or acquaintances that arose prior to his employment as a corrections officer.

80. Additionally, as the issue of discrimination is outside of the Merit Board's statutory expertise as other CCSO officers have attempted to raise the same issue -- only to be told it is not relevant before the Board, such as in the cases of LaShon Shaffer and David Evans III -- it is futile to pursue that issue in that respective venue.

81. In LaShon Shaffer's case, Officer Shaffer attempted to bring in discrimination charges and make an argument that non-Black officers involved in an arrest were not disciplined at all, even though Officer Shaffer was sent for termination. The Board declined to allow evidence of this and also refused to entertain the argument; indeed, in the decision, the Board emphasized that each case was analyzed on its own merits, implying that disparate treatment evidence was not considered.

82. In David Evans' case, Officer Evans attempted to place discrimination charges into

17

FILED DATE: 9/17/2021 4:34 PM 2021CH01592

evidence and make a disparate treatment argument that he was being singled out based on his race. The Board declined to allow evidence of this and also refused to entertain the argument.

83. For years, officers have tried to introduce discrimination evidence at the Board only to be rebuffed like what happened in the Evans' and Shaffer' cases.

84. It is futile to present discrimination evidence to the Cook County Sheriff's Merit Board.

85. Plaintiff avers that the foregoing facts establish that the Sheriff and the Board have engaged in intentional discrimination against Plaintiff, *to wit*, the gang affiliation policy has an adverse impact on Blacks who go into law enforcement. As Plaintiff comes from a poor background in Englewood and is Black, he was subjected to intentional discrimination when he was terminated for his mere association to those with gang ties and/or criminal backgrounds.

86. Due to the Sheriff's and the Board's intentional discrimination, the terms and conditions of his employment were negatively impacted and he suffered damages, including: job loss, career loss, reputational damage, loss of pay and benefits (including pension contributions and service credits), loss of health insurance, loss of benefit time and uniform allowances, loss of his home, loss of his relationships, emotional distress in the extreme (including night terrors, sweats, depression, anxiety, generalized fear), and other compensatory losses.

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Honorable Court enter Judgment in his favor, and against Defendants, and enter all appropriate relief, including reinstatement, back pay, back benefits, reasonable attorneys' fees, and compensatory damages to make him whole completely in an amount to be determined at trial in addition to recoupment of all lost pay and benefits.

## COUNT IV: TITLE VII VIOLATION DISPARATE IMPACT DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN
### (Plaintiff v. Defendants Sheriff and Board)

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

87. At all times relevant, Defendant Sheriff has been an "employer" within the meaning of Title VII because it has employed 15 or more employees for each working day in each of 20 or more weeks in the current and preceding calendar years.

88. At all times relevant Defendant Sheriff has been engaged in an industry affecting commerce.

89. At all times relevant, Plaintiff has been an "employee" within the meaning of Title VII because he was employed by the Sheriff and Cook County, Illinois.

90. While the Board and Sheriff are purportedly independent according to law, in fact, they operate in tandem and as one entity, at least for the following reasons:

   m.  The Board, by and large, upholds the disciplinary requests sought by the Sheriff;

   n.  The Board's members are appointed by the Sheriff and, on information and belief, the Sheriff has the ability to force Board members to resign from their positions;

   o.  The Board is staffed by persons employed by the Cook County Sheriff's Office and/or there is a transference relationship between the Board's staff and the Sheriff's office, including that persons who work in the Sheriff's Office may be detailed to the Board, and vice versa;

   p.  The Board's staff utilizes an "@ccsheriff.org" email address, which is separate and distinct from the "@cookcountyil.gov" email address. "@ccsheriff.org" utilized by the Board is the same as the domain utilized by the Sheriff's Office.

   q.  The Board's Rules and Regulations incorporate the General Orders and Special Orders of the Sheriff's Office at Article X.

   r.  The Sheriff may deputize members of the Board. *See* 55 ILCS 5/3-7002.

   s.  The Sheriff may appoint replacements to fill vacancies. *See* 55 ILCS 5/3-7002.

19

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

t.   The Board establishes classifications of ranks and qualifications for same that go into effect at the Sheriff's Office. *See* 55 ILCS 5/3-7006.

u.   The Board's and the Sheriff's disciplinary authority are connected and have mutuality in that "disciplinary measures prescribed by the Board may be taken by the Sheriff. . ." *See* 55 ILCS 5/3-7011.

v.   The Board lacks true independence from the Sheriff in fact and, for purposes of this Count, their actions are in tandem and constitute dual action from the same governmental unit.

w.   Both the Board and the Sheriff constitute Plaintiff's "employer" for Title VII purposes and the Board is a subunit of the Sheriff for purposes of Title VII.

x.   For purposes of this Count, the actions of the Sheriff and the Board are all one as to Plaintiff in that both entities together caused Plaintiff's termination based on violations of gang and criminal affiliation policies.

91. Because of Plaintiff's background and where he grew up in Englewood, at 7432 South Aberdeen, Chicago, Illinois 60621, it was a foregone conclusion that, indeed, he would know individuals who were affiliated with Chicago street gangs; indeed, gang affiliation was so common as to be nearly an aspect of local culture, especially for boys and men growing up in Plaintiff's youth.

92. As Plaintiff joined the Cook County Sheriff's Office as a Correctional Officer, he also maintained some relationships with persons from his youth who had gang affiliations, including Ronald Webb, Michael Hopkins, Brandon Armour, and Dante Mason.

93. These were people he grew up with or knew in his youth or in his twenties, and he

socialized with them because they were friends or because they grew up in the same neighborhood around the same time and shared common cultural and social backgrounds.

94. At all times, Plaintiff admitted that he had these social relationships to the Sheriff's Office of Professional Review, never once denied these relationships, and averred that they were social in nature, and resulted from his youth or common cultural background.

95. For these relationships, and without any evidence of any wrongdoing whatsoever resulting from them, Plaintiff was investigated by the Sheriff's Office, suspended without pay, and fired.

96. The Sheriff, through the Board, committed disparate impact discrimination against Plaintiff based upon his race (Black) and National Origin (Englewood, Illinois) by applying the gang affiliation and other general orders against him.

97. White / non-Black officers who are not from such upbringings and backgrounds do not have to relinquish their prior social relationships or acquaintances merely because they join law enforcement.

98. At the same time, too, because of a higher rate of policing in Englewood, there is a higher rate of arrests, indictments, and convictions for crime there, making it more likely anyone from that neighborhood who goes into law enforcement would have associations with persons with criminal backgrounds. Not so for people from white or wealthier neighborhoods.

99. The Merit Board's decision specifically states, "it is against every aspect of law enforcement for an officer to be in an ongoing association with gang members and felons." *Exhibit A*, p.3-4.

100.      The foregoing statement demonstrates the Merit Board's decision has an adverse impact

FILED DATE: 9/17/2021 4:34 PM 2021CH01592

on Blacks, as a whole, as the likelihood of such associations with gang members and felons among Blacks who go into law enforcement is much more significant than non-Black officers.

101.     The Sheriff or Board cannot articulate a reason on the basis of job-relatedness and business necessity for investigating, suspending, and terminating Plaintiff on the basis of his ongoing social relationships or acquaintances that arose prior to his employment as a corrections officer.

102.     Additionally, as the issue of discrimination is outside of the Merit Board's statutory expertise as other CCSO officers have attempted to raise the same issue -- only to be told it is not relevant before the Board, such as in the cases of LaShon Shaffer and David Evans III -- it is futile to pursue that issue in that respective venue.

103.     In LaShon Shaffer's case, Officer Shaffer attempted to bring in discrimination charges and make an argument that non-Black officers involved in an arrest were not disciplined at all, even though Officer Shaffer was sent for termination. The Board declined to allow evidence of this and also refused to entertain the argument; indeed, in the decision, the Board emphasized that each case was analyzed on its own merits, implying that disparate treatment evidence was not considered.

104.     In David Evans' case, Officer Evans attempted to place discrimination charges into evidence and make a disparate treatment argument that he was being singled out based on his race. The Board declined to allow evidence of this and also refused to entertain the argument.

105.     For years, officers have tried to introduce discrimination evidence at the Board only to be rebuffed like what happened in the Evans' and Shaffer' cases.

106.     It is futile to present discrimination evidence to the Cook County Sheriff's Merit

Board.

107.     Plaintiff avers that the foregoing facts establish that the Sheriff and the Board have engaged in disparate impact discrimination against Plaintiff, *to wit*, the gang affiliation policy has an adverse impact on Blacks who go into law enforcement and specifically against Plaintiff. As Plaintiff comes from a poor background in Englewood and is Black, he was subjected to such discrimination when he was terminated for his mere association to those with gang ties and/or criminal backgrounds.

108.     Due to the discriminatory outcome of the Sheriff's and the Board's application of the gang affiliation policies, the terms and conditions of Plaintiff's employment were negatively impacted and he suffered damages, including: job loss, career loss, reputational damage, loss of pay and benefits (including pension contributions and service credits), loss of health insurance, loss of benefit time and uniform allowances, loss of his home, loss of his relationships, emotional distress in the extreme (including night terrors, sweats, depression, anxiety, generalized fear), and other compensatory losses.

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Honorable Court enter Judgment in his favor, and against Defendants, and enter all appropriate relief, including reinstatement, back pay, back benefits, reasonable attorneys' fees, and compensatory damages to make him whole completely in an amount to be determined at trial in addition to recoupment of all lost pay and benefits.

## JURY DEMAND

JURY TRIAL DEMANDED

Dated: September 17, 2021

Respectfully submitted,

**SCOTT RICE**

*/s/ Nicollette M. Haines*

By: _____
One of Plaintiff's Attorneys

*Nicollette M. Haines, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 334
F: (312) 846-6363
E: Nicollette@dispartilaw.com

FILED DATE: 9/17/2021 4:34 PM  2021CH01592

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## CHANCERY DIVISION

SCOTT RICE,

    Plaintiff,

    v.                                                              Case Number: 2021 CH 01592

THOMAS J. DART in his official capacity as
Sheriff of Cook County, Illinois;                                 Judge Neil H. Cohen
THE COOK COUNTY SHERIFF'S
MERIT BOARD; and COOK COUNTY,
ILLINOIS, as indemnitor.

    Defendants.

## **ILLINOIS SUPREME COURT RULE 222 AFFIDAVIT OF DAMAGES**

    NOW COMES, NICOLLETTE M. HAINES, Affiant, and avers as follows under oath in support of the damages in the Complaint in the above-captioned matter.

1. Under penalties as provided by law, and pursuant to Illinois Supreme Court Rule 222, the undersigned Affiant, Nicollette M. Haines, hereby certifies that the damages sought in the above-captioned cause, *Rice v. Dart, et al.*, are in excess of $50,000.

2. Further Affiant sayeth not.

                                   */s/ Nicollette M. Haines*

*Nicollette M. Haines, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 334
F: (312) 846-6363
E: Nicollette@dispartilaw.com

FILED DATE: 9/17/2021 4:34 PM 2021CH01592

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, Nicollette M. Haines, an attorney, hereby certifies that on September 17, 2021, she served Plaintiff's First Amended Complaint on all counsel of record via this Court's Electronic Service Provider, Odyssey E-File, and that such counsels are registered e-filers.

By: */s/ Nicollette M. Haines*
_____

# EXHIBIT A

FILED
9/17/2021 4:34 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH01592

14869811

## COOK COUNTY SHERIFF'S MERIT BOARD

Sheriff of Cook County            )
                                  )
vs.                               )
                                  )    Docket No(s). 1966/2106
Scott Rice                        )
Correctional Officer              )

### DECISION

This matter coming on to be heard pursuant to notice before Byron T. Brazier, Board Member, on November 19, 2019 Board finds as follows:

### Jurisdiction

Scott Rice, hereinafter referred to as the Respondent, was appointed a Correctional Officer on November 13, 2006. Respondent's position as a Correctional Officer involves duties and responsibilities to the public; each member of the Cook County Sheriff's Merit Board, hereinafter Board, has been duly appointed to serve as a member of the Board pursuant to confirmation by the Cook County Board of Commissioners, State of Illinois, to sit for a stated term; the Board has jurisdiction of the subject matter of the parties in accordance with 55 ILCS 5/3-7001, et seq; and the Respondent was served with a copy of the Complaint and notice of hearing and appeared before the Board with counsel to contest the charges contained in the Complaint.

As a threshold matter, a proceeding before the Merit Board is initiated at the time the Sheriff files a written charge with the Merit Board. 55 ILCS 5/3-7012. A document is considered filed, in this case with the Merit Board, "when it is deposited with and passes into the exclusive control and custody of the [Merit Board administrative staff], who understandingly receives the same in order that it may become a part of the permanent records of his office." See Dooley v. James A. Dooley Associates Employees Retirement Plan, 100 Ill.App.3d 389, 395 (1981)(quoting Gietl v. Commissioners of Drainage District No. One, 384 Ill. 499, 501-502 (1943) and citing Hamilton v. Beardslee, 51 Ill. 478 (1869)); accord People ex rel. Pignatelli v. Ward, 404 Ill. 240, 245 (1949); in re Annex Certain Terr. To the Village of Lemont, 2017 IL App (1st) 170941, ¶ 18; Illinois State Toll Highway Authority v. Marathon Oil Co., Ill. App. 3d 836 (1990) ("A 'filing' implies delivery of a document to the appropriate party with the intent of having such document kept on file by that party in the appropriate place." (quoting Sherman v. Board of Fire & Police Commissioners, 111 Ill. App. 3d 1001, 1007 (1982))); Hawkyard v. Suttle, 188 Ill. App. 168, 171 (1914 ("A paper is considered filed when it is delivered to the clerk for that purpose.").

The original Complaint (#1966) in this matter was filed with the Merit Board's administrative staff on January 24, 2017, the Amended Complaint on January 23, 2018 and the Second Amended Complaint on May 2, 2019. The original Complaint (#2106) was filed on May 2, 2019 and the Amended Complaint on May 21, 2019. Regardless of whether or not Merit Board Members were properly appointed during a given term, the Merit Board, as a quasi-judicial body

# EXHIBIT A

and statutorily created legal entity, maintained at all times a clerical staff not unlike the Clerk of the Circuit Court ("Administrative Staff"). These Administrative Staff members receive and date stamp complaints, open a case file, assign a case number, and perform all of the functions typically handled by the circuit clerk's office. Just as a timely filed complaint would be accepted by the circuit clerk even if there were no properly appointed judges sitting on that particular day, so too was the instant Complaint with the Administrative Staff of the Merit Board. Accordingly, the Complaint filed commencing the instant action, was properly filed, and will be accepted as the controlling document for calculating time in this case.

## Background:

That on November 13, 2006, the RESPONDENT was appointed a Correctional Officer. That on February 2, 2007, the RESPONDENT was assigned to Division VI of the Cook County Department of Corrections ("CCDOC"), located at 2801 S. Sacramento Avenue, Chicago, Illinois. That on November 1, 2007, the RESPONDENT was assigned to Division V of the CCDOC, located at 2700 S. California Avenue, Chicago, Illinois. That on October 10, 2013, the RESPONDENT was assigned to Division VIII (sometimes, referred to as "RTU") of the CCDOC, located at 2750 S. California Avenue, Chicago, Illinois.

## <u>Docket #1966</u>

The original complaint charges that on January 23, 2018 the respondent was placed on was placed on administrative leave. Rice was assigned to the Cook County Department of Corrections ("CCDOC"). That the RESPONDENT associated with persons, whom he knew, or should have known were felons and/or affiliated with a known criminal organization ("gang"). That RESPONDENT failed to report to the Cook County Sheriff's Office ("CCSO") and/or the CCDOC that he associated with persons, whom he knew, or should have known were felons and/or affiliated with a gang. That the Billing Name and Address ("BNA") associated to telephone number 773-220-5376 was RESPONDENT'S name and home address. Additionally, on December 5, 2014, RESPONDENT was interviewed by investigators from the Cook County Sheriff's Office of Professional Review ("OPR") and provided them with a signed statement. And on December 5, 2014, RESPONDENT admitted to investigators from OPR that, although he was not affiliated with a gang, RESPONDENT associated with known gang members. Respondent also admitted on December 5, 2014, RESPONDENT admitted to investigators from OPR that he has known Dante Mason for ten years. Based on the original complaint Dante Mason, who is a self-admitted member of the Gangster Disciples street gang, was incarcerated at the CCDOC, when he called RESPONDENT'S telephone on November 22, 2013. When Dante Mason was unable to reach RESPONDENT on that attempted call, Dante Mason made a second telephone call to a third individual, which was recorded on the SECURUS telephone monitoring system at the CCDOC, and instructed the third individual to tell RESPONDENT to give a contribution to Dante Mason's bond money. Dante Mason provided the third individual with RESPONDENT'S telephone number.

In a separate incident, the Chicago Police Department contact card documented a contact with RESPONDENT on March 19, 2014, at 7500 S. Morgan, Chicago, Illinois, while RESPONDENT

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

# EXHIBIT A

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

was a passenger in a car in the company of Ronald Webb, identified by the Chicago Police Department as a member of the Conservative Vice Lords street gang. During the protective pat down, RESPONDENT'S Cook County Sheriff's Office ("CCSO")-issued badge was found.

In a separate incident, the Chicago Police Department contact card documented a contact with RESPONDENT on March 3, 2012, at 7330 S. May, Chicago, Illinois, while RESPONDENT was in the company of several self-admitted members of the Gangster Disciples street gang, during which RESPONDENT identified himself to Chicago Police Officers as a Cook County Sheriff.

By these actions, RESPONDENT violated the Rules and Regulations and General Orders of the Cook County Sheriff's Office and the Cook County Department of Corrections, specifically:

**SHERIFF'S ORDER 11.2.20.0 (effective date: January 25, 2013)**
**RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts: II, III, VI A2&4, B1,2&4, D9a&d, H2&3, as defined in the original order.**

### Docket #2106

The amended complaint charges that the Respondent, on multiple dates in 2017 associate with known gang members by the name of Ronald Webb, a self-admitted member of the Conservative Vice Lords, Michael Hopkins and Brandon Armour, who were both convicted felons.

By these actions, the Respondent violated the Rules and Regulations of the Cook County Sheriff's Department, specifically:

**CCDOC General Order 3.8 (effective October 1, 1998) and the following Policy Subsections: I, II A&B, III A4, B18, D6, and G. Also Sheriff's Order 11. 2.20.1 (effective March 12, 2015) and the following subparts: Policy II, III, IV, V A&B, 6 B&E26,39,43, and the Rules and Regulations of the Cook County Sheriff's Merit Board, Article X, Paragraph B3**

**Issues Presented:** Whether the actions of the Respondent violated any of the General orders and rules and regulations set forth above and what if any discipline is appropriate if a violation occurred.

Based on the evidence presented and the testimony of the Respondent, Scoot Rice violated the Sheriff's policy by direct evidence from the Chicago Police Department's contact cards and by admission of the Respondent. These admissions are also documented in the Respondent's Findings of Fact documentation. The Sheriff did prove the on-going contact and association with self-identified gang members and convicted felons. The testimony of the respondent that he was unaware of his friend's criminal activity is not credible. It is not credible that a law enforcement, Sheriff's Correctional Officer, who grew up in the same neighborhood, would not know his friend's involvement in criminal activity. He may have not known the details of every criminal act but he should have known, that as a Cook County Correctional Officer, it is against

# EXHIBIT A

every aspect of law enforcement for an officer to be in an ongoing association with gang members and felons.

**Order:** The Merit Board finds that the respondent did violate the General Orders and Policies of the Cook County Sheriff's Department, and the Rules and Regulations of the Cook County Sheriff's Merit Board and that the Respondent should be terminated effective January 24, 2017.

FILED DATE: 9/17/2021 4:34 PM   2021CH01592

# EXHIBIT A



**JOHN J. DALICANDRO,** Chairman
**BYRON BRAZIER,** Vice-Chairman
**VINCENT T. WINTERS,** Secretary
**KIM R. WIDUP,** Board Member
**KIMBERLY PAT GODDEN,** Board Member
**ELENI P. SIANIS,** Board Member



Telephone: 312-603-0170
Fax: 312-603-9865
Email: Sherif.MeritBoard@cookcountyil.gov

## COOK COUNTY
## SHERIFF'S MERIT BOARD
### 69 West Washington - Suite 1100
### Chicago, IL 60602

Scott Rice
Correctional Officer
Docket No. 1966/2106

This Decision is adopted and entered by a majority of the Members of the Merit Board:

John J. Dalicandro, Byron Brazier, Kim R. Widup, Kimberly Pate Godden and Eleni P. Sianis.

Not Present: Vincent T. Winters

### DISSENT

The following Members of the Merit Board dissent from the Findings and Decision of the majority of the Board.

### [NONE]

DATED AT COUNTY OF COOK, STATE OF ILLINOIS, THIS 4th DAY OF MARCH, 2021.

FILED DATE: 9/17/2021 4:34 PM 2021CH01592



**EXHIBIT 1**

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

FILED
9/17/2021 4:34 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH01592

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, RCC01/GCB*
*Washington, DC 20530*

August 10, 2021          14869811

Mr. Scott Rice
c/o Cass T. Casper, Esquire
Disparti Law Group
121 W. Wacker Drive
Suite 2300
Chicago, IL  60601

Re:  EEOC Charge Against Cook County Sheriff, et al.
     No. 440202104858

Dear Mr. Rice:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by        /s/ Karen L. Ferguson
        Karen L. Ferguson
   Supervisory Civil Rights Analyst
    Employment Litigation Section

cc: Chicago District Office, EEOC
    Cook County Sheriff, et al.